UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHARLES EDWARD EUBANKS, SR.,

                Petitioner,

vs.                                Case No. 3:06-cv-845-J-34TEM

WALTER A. MCNEIL,
et al.,

                Respondents.

_____

**ORDER OF DISMISSAL WITH PREJUDICE**

Petitioner Charles Edward Eubanks, Sr., an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on September 14, 2006, pursuant to the mailbox rule.[1] Petitioner challenges a 2000 state court (Putnam County, Florida) judgment of conviction for armed burglary of a dwelling and grand theft on sixteen grounds.

---

[1] The Petition (Doc. #1) was filed in this Court on September 20, 2006; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to prison authorities for mailing to this Court (September 14, 2006). See Houston v. Lack, 487 U.S. 266, 275-76 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus.  Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). <u>See</u> Respondents' Response to Petition (Response) (Doc. #11).[2] On December 28, 2006, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #10), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on February 28, 2007. <u>See</u> Petitioner's Reply to Respondents' Response to Petition for Writ of Habeas Corpus (Reply) (Doc. #14).

Pursuant to an Order of the Court (Doc. #16) requesting supplemental briefing and further development of the record, Respondents filed a supplemental brief and exhibits, <u>see</u> Respondents' Supplemental Brief (1st Supp. Response) (Doc. #19); Respondents' Motion to Accept Second Supplemental Appendix in Support of the Supplemental Brief/Response to Petition (Doc. #20); Respondents' Motion to Accept Third Supplemental Appendix in Support of the Supplemental Brief/Response to Petition (Doc. #21), and Petitioner replied. <u>See</u> Petitioner's Supplemental Brief/Reply (Supp. Reply) (Doc. #24). Additionally, pursuant to the Court's Orders (Docs. #27, #29), Petitioner filed an Affidavit (Pet. Aff.) (Doc. #30); Respondents responded to the allegations in the

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex." Additionally, Respondents submitted supplemental exhibits, which will be referred to as "Supp. Resp. Ex." <u>See</u> Docs. #19, #20, #21.

Affidavit, <u>see</u> Respondents' Second Supplemental Brief/Response to Petition (2nd Supp. Response) (Doc. #31); and Petitioner replied to the response. <u>See</u> Petitioner's Second Supplemental Reply to Response (2nd Supp. Reply) (Doc. #32). This case is ripe for review.

The following procedural history is relevant to the one-year limitations issue. On July 27, 2000, Petitioner Eubanks was charged in Putnam County, Florida, with armed burglary of a dwelling (count one), grand theft (count two) and aggravated fleeing or attempting to elude a police officer (count three). Resp. Ex. A at 34, Second Amended Information (Information). Petitioner pled not guilty to the charges. <u>Id</u>. at 18. Before trial, the State filed a notice of its intent to classify Petitioner as a habitual offender and prison releasee reoffender for purposes of sentencing. <u>Id</u>. at 26, 27.

On August 10, 2000, Petitioner proceeded to a jury trial on counts one and two.[3] <u>Id</u>. at 141, Transcript of the Jury Trial Proceedings (Tr.) at 1-163. At the conclusion of the trial, a jury found Petitioner guilty of armed burglary of a dwelling and grand theft, as charged. <u>Id</u>. at 157-58; Resp. Ex. A at 73, 122. Thereafter, on September 26, 2000, the trial court adjudicated Petitioner guilty and sentenced him to life imprisonment on count

---

[3] The court granted Petitioner's motion to sever count three (aggravated fleeing or attempting to elude a police officer) of the Information. Resp. Ex. A at 38, 39.

4

one and to sixty-three and one-half months on count two, both terms to run concurrently. Resp. Ex. A at 121-28.

On appeal, Petitioner, through counsel (Leonard R. Ross), raised one issue: the trial court erred in admitting Eubanks' statements, made to Detective Manning, that he did not steal the gun, but that he did sell the gun. Id. at 165-85; see Tr. at 86. The State filed an Answer Brief. Resp. Ex. A at 187-204. On August 28, 2001, the appellate court affirmed Petitioner's conviction and sentence per curiam, without issuing a written opinion, see Eubanks v. State, 793 So.2d 967 (Fla. 5th DCA 2001); Resp. Ex. A at 205, and the mandate issued on September 14, 2001, see Resp. Ex. A at 206.

Petitioner's conviction became final on November 26, 2001 (90 days after August 28, 2001). See Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006) (holding that entry of judgment, and not the issuance of the mandate, starts the clock running for the time to petition the United States Supreme Court for certiorari review); Supreme Court Rule 13.3.[4] Because Petitioner's conviction was after April 24, 1996, the effective date of the AEDPA, Petitioner had one year from the date his

---

[4] Supreme Court Rule 13.3 states, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]" Thus, Petitioner had ninety days in which to file a petition for a writ of certiorari in the United States Supreme Court after the appellate court entered judgment.

conviction became final to file the federal petition (November 26, 2002).  His Petition, filed on September 14, 2006, is due to be dismissed as untimely unless he can avail himself of one of the statutory provisions which extends or tolls the limitations period.

Petitioner's one-year period of limitations began to run on November 27, 2001, and ran for two hundred and seventy-three (273) days until August 27, 2002, when Petitioner filed his <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus Seeking Belated Appeal Because of Ineffective Assistance of Appellate Counsel.  Resp. Ex. B at 1-110.  Without requiring a response from the State, the appellate court denied the petition on September 27, 2002.  <u>Id</u>. at 111.

Petitioner's one-year period of limitations began to run again on September 28, 2002.  With ninety-two days (92) remaining, Petitioner had until Monday, December 30, 2002, to file his federal petition in this Court.  After the expiration of the one-year limitations period, Petitioner continued to file motions in state court.  However, when post conviction motions are filed after the expiration of the federal limitations period, the motions cannot toll the limitations period because there is no period left.[5]

_____

[5] <u>See</u> <u>Tinker v. Moore</u>, 255 F.3d 1331, 1334-35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must actually have a properly filed state court petition or motion pending within the one-year period in order to toll the limitations period), <u>cert.</u> <u>denied</u>, 534 U.S. 1144 (2002); <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir.) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.  A state-court petition like [Petitioner]'s

After expiration of the one-year period of limitations, Petitioner filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 on March 6, 2003, with the benefit of the mailbox rule. Resp. Ex. C at 1-77. The court summarily denied a portion of his claims and ordered the State to file a response. <u>Id</u>. at 120-22. The State complied. <u>Id</u>. at 78-112. The court ultimately ordered that an evidentiary hearing be conducted on grounds IA, IC and II, and on June 18, 2003, conducted an evidentiary hearing. <u>Id</u>. at 113, 154-212 (EH Tr.). After the hearing, the court denied the remaining claims on June 19, 2003. <u>Id</u>. at 116-28.

Petitioner appealed, <u>see</u> <u>id</u>. at 132, 213-29, and the State filed an Answer brief. <u>Id</u>. at 231-40. On June 11, 2004, the appellate court affirmed the denial <u>per</u> <u>curiam</u>, <u>see</u> <u>Eubanks v. State</u>, 874 So.2d 1266 (Fla. 5th DCA 2004); Ex. C at 241, and the mandate issued on June 30, 2004, <u>see</u> Resp. Ex. C at 242.

Additionally, after the expiration of the one-year period of limitations, Petitioner filed a <u>pro</u> <u>se</u> Motion to Correct Illegal Sentence pursuant to Fla. R. Crim. P. 3.800(a). Resp. Ex. D at 1-12. Pursuant to the mailbox rule, Petitioner filed the motion on June 14, 2005. <u>See</u> <u>id</u>. Shortly thereafter, on July 6, 2005, the

---

that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), <u>cert</u>. <u>denied</u>, 531 U.S. 991 (2000).

court denied Petitioner's Rule 3.800(a) motion, <u>id</u>. at 13-17, and later denied his motion for rehearing, <u>id</u>. at 18-21, 22.

Petitioner appealed, and the appellate court, without requiring a response from the State, affirmed the denial <u>per curiam</u>, without issuing a written opinion, on October 18, 2005. <u>Id</u>. at 23. Petitioner filed a motion for rehearing, clarification and certification, <u>id</u>. at 24-27, and on December 9, 2005, the appellate court granted the motion for clarification, wrote an opinion explaining its affirmance of the denial of the motion and certified conflict with a case from another appellate court. <u>Eubanks v. State</u>, 917 So.2d 898 (Fla. 5th DCA 2005); Resp. Ex. D at 28-29. On December 29, 2005, the mandate issued. Resp. Ex. D at 30.

Petitioner sought review of the appellate court's decision in the Supreme Court of Florida. Resp. Ex. E at 1-2. The court appointed counsel, postponed its ruling on jurisdiction and ordered briefs on the merits. <u>Id</u>. at 4. On August 8, 2006, after receiving briefs on the merits, <u>id</u>. at 5, 28, 52, the court declined to exercise its jurisdiction. <u>Eubanks v. State</u>, 937 So.2d 665 (Fla. 2006); Resp. Ex. E at 63.

Upon consideration of the foregoing, it appears that the Petition, filed on September 14, 2006, is untimely filed in this Court. However, given the opportunity to address why the dictates of the one-year limitations period should not be imposed upon him,

Petitioner now "vigorously contests" Respondents' argument that his Petition is untimely. Reply at 3. Specifically, Petitioner asserts that his Petition is not time barred and sets forth several equitable tolling arguments.

First, Petitioner states that his Petition is not time barred in light of the arguments made in <u>Meissner v. Crosby</u>. Reply at 3; Petition at 31 (citing Appendix A, <u>Meissner v. Crosby</u>, Case No. 1:04-cv-420-MMP-MD, Petitioner Meissner's Objections to the Report and Recommendation, filed August 8, 2006, at 3-6). Citing <u>Carey v. Saffold</u>, 536 U.S. 214, 222 (2002), Petitioner Meissner argued that AEDPA's tolling provision modifies the one-year limitations rule "in order to give States the opportunity to complete one full round of review, free of federal interference." <u>See</u> Petition, Appendix A at 3. However, <u>Carey v. Saffold</u> does not affect the calculation of the running of the one-year period of limitations. <u>See</u> <u>Wade v. Battle</u>, 379 F.3d 1254, 1261-62 (11th Cir. 2004) (recognizing <u>Carey v. Saffold</u> as determining that an application is pending as long as the state collateral review process is "'in continuance'- i.e. 'until the completion of' that process[]").

Further, in <u>Meissner</u>, the petitioner asserted that Florida law allows him to file his state post-conviction motion within two years of his conviction being final and that the one-year time limitation for filing in federal court thus interferes with Florida law. <u>See</u> Petition, Appendix A at 4-6. Petitioner's reliance on

this assertion is unavailing.  <u>See</u> <u>Tinker v. Moore</u>, 255 F.3d 1331, 1334-35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must actually have a properly filed state court petition or motion pending within the one-year period in order to toll the limitations period), <u>cert</u>. <u>denied</u>, 534 U.S. 1144 (2002).  Thus, Petitioner's reliance on the <u>Meissner</u> arguments does not alter this Court's conclusion that his Petition appears to be time barred.

Next, Petitioner asserts that he is entitled to equitable tolling for the periods of delay attributable to misadvice, misrepresentations, the withholding of trial transcripts, the failure to return files and records, abandonment and failure to communicate with respect to his attorneys:  Daniel P. Hansen,[6] Malcolm L. Stephens, Jr., and Ellis S. Rubin.  Reply at 3-12. Based on Petitioner's allegations, the following time periods are at issue:  (1) August 28, 2001 (when Daniel P. Hansen assured Petitioner that he was going to take over his direct appeal and timely file a petition for writ of <u>certiorari</u> in the United States Supreme Court, but failed to do so and affirmatively misadvised Petitioner that his direct appeal was still pending in the appellate court) to August 12, 2002 (when Petitioner learned that

_____

[6] Petitioner uses the surname "Hansen" as well as "Hanson" in referring to Daniel P. Hansen.  Reply at 4; Pet. Aff. at 1.  Since the Florida Bar website currently reflects that the surname is "Hansen," this Court will refer to him as Daniel P. Hansen.  <u>See</u> http://www.floridabar.org.

Hansen had not timely filed a petition for <u>certiorari</u> on his behalf in the United States Supreme Court); (2) October 2, 2002 (when Malcolm L. Stephens, Jr., affirmatively misrepresented to Petitioner that he had prepared and filed a Rule 3.850 motion, but failed to do so) to January 31, 2003 (when Petitioner discovered that Stephens had not prepared and filed the Rule 3.850 motion); (3) January 31, 2003, to February 24, 2003 (when Petitioner was finally able to secure all of his trial transcripts, files and records in order to prepare his own Rule 3.850 motion after Stephens' abandonment, failure to communicate and withholding of trial transcripts); (4) February 28, 2005 (when Ellis S. Rubin affirmatively misstated to Petitioner that he had prepared and filed a Rule 3.800 motion, but failed to do so) through May 17, 2005 (when Petitioner discovered that Rubin had not prepared and filed the Rule 3.800 motion); and, (5) May 17, 2005, through June 1, 2005 (when Petitioner was finally able to secure all of his trial transcripts, files and records in order to prepare his own Rule 3.800 motion after Rubin's abandonment, failure to communicate and withholding of trial transcripts).

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007); <u>see</u> <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that

equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted).  The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted.  Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted).

Conclusory allegations, without supporting evidence, are insufficient to meet Petitioner's burden.  Drew v. Dep't of Corr., 297 F.3d 1278, 1292-93 (11th Cir. 2002) (holding that the district court did not abuse its discretion in denying an evidentiary hearing on equitable tolling when the petitioner only presented conclusory allegations, without supporting evidence, to support his claim); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . 'when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.'") (quotation and citation omitted), cert. denied, 502 U.S. 1105 (1992).  "There must be 'an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part' in order for a court to find there was such

egregious attorney misconduct that a petitioner is entitled to equitable tolling." <u>Melson v. Allen</u>, 548 F.3d 993, 1001 (11th Cir. 2008) (citing <u>Holland v. Florida</u>, 539 F.3d 1334, 1339 (11th Cir. 2008) (per curiam)), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>, (U.S. July 9, 2009) (No. 09-5373).

To allow Petitioner Eubanks the opportunity to develop the record, this Court directed Petitioner to supplement the record with his own affidavit, outlining the misadvice, misrepresentations, withholding of trial transcripts, failure to return files and records, abandonment and failure to communicate with respect to Daniel P. Hansen, Malcolm L. Stephens, Jr., and Ellis S. Rubin. This Court further instructed Petitioner to set forth his communications with these attorneys during the above-referenced time periods, including the specific dates of when he retained each attorney, how the retention was arranged and whether a fee was exchanged. Petitioner was also given the opportunity to submit his sister's affidavit to explain the retainer he alleged was paid to Ellis S. Rubin by Petitioner's father.[7] The Court noted that Petitioner should include any correspondence or contracts to show the communications between Petitioner and the attorneys, and that if no written correspondence or contracts existed, he should explain how he communicated with these three attorneys and how he discovered that they had not filed the

---

[7] <u>See</u> Supp. Reply at 3.

petition for writ of <u>certiorari</u>, the Rule 3.850 motion and the Rule 3.800 motion. The Court also ordered that Respondents (after the filing of Petitioner's affidavit) provide an affidavit from Daniel P. Hansen.[8]

In Petitioner's Affidavit (Doc. #30), filed August 6, 2009, he sets forth the alleged involvement of each attorney:

> Petitioner states that Daniel Hanson [sic] was contacted and **tenatively [sic] retained** to take over the state appellate process including a petition for writ of certiorari which time periods fell between August 28[,] 2001[,] and August 12[,] 2002, and failed to do so.
>
> Petitioner states that Malcolm Stephens was contacted and **tenatively [sic] retained** to file a [Rule] 3.850 motion between October 2[,] 2002[,] and January 31[,] 2003[,] and failed to do so.
>
> Petitioner states that Ellis Rubin was **retained** to file a [Rule] 3.800(a) motion between February 28[,] 2005[,] and May 17[,] 2005[,] but failed to do so.

Pet. Aff. at 1-2 (emphasis added). Describing his "awkward position" at this stage of the litigation, Petitioner asserts that his father (John Eubanks), who has passed away, was the primary person involved in the communications with the three attorneys. <u>Id</u>. at 2 (citing Supp. Reply at 3). Petitioner further explains

---

[8] This Court noted that "[w]hile there are other attorneys (Rubin and Stephens) involved, the Florida Bar website currently reflects that Ellis S. Rubin is deceased, and Malcolm L. Stephens, Jr., is retired. <u>See</u> Court's Order (Doc. #27) (citing http://www.floridabar.org).

that his sister (Deborah Eubanks, "the go-between Petitioner and the father") can provide the critical information, thus, Petitioner requests that this Court subpoena her since he has been unable to locate her by phone or by mail. _Id_. Petitioner's request will be denied. Petitioner has had adequate time to develop the record and submit additional documentation, including affidavits. Moreover, according to Petitioner, his sister was not the person who was allegedly involved in communications with any of the attorneys. Finally, Petitioner Eubanks has not provided any information regarding his sister's whereabouts to the Court.

Turning to the periods of time for which Petitioner seeks equitable tolling, the Court first considers Petitioner's allegations regarding the actions (or inaction) of attorney Hansen. Petitioner complains that his appellate counsel (Daniel P. Hansen) assured Petitioner that he was going to take over Petitioner's direct appeal and timely file a petition for writ of certiorari on his behalf in the United States Supreme Court, but failed to do so. Reply at 4. He further asserts that Hansen "affirmatively misadvised [Petitioner] that his direct appeal was still pending long after it had been decided by the Fifth District Court of Appeal of Florida." _Id_. Based upon these assertions, Petitioner claims that he is entitled to the benefit of equitable tolling for the period beginning August 28, 2001, when the appellate court affirmed his conviction and sentence per curiam on direct appeal (Eubanks, 793 So.2d 967) until August 12, 2002, when Petitioner

learned that Hansen had not timely filed a petition for writ of
<u>certiorari</u> on his behalf in the United States Supreme Court and
that his direct appeal had become final after the expiration of the
ninety-day period for him to seek <u>certiorari</u> review. Reply at 4.

Respondents submitted the Affidavit of Daniel P. Hansen[9]
(Hansen Aff.) in support of their contention that Petitioner is not
entitled to equitable tolling for the period from August 28, 2001,
through August 12, 2002. In the Affidavit, Daniel P. Hansen avers:

> 1. I am strictly a real estate attorney and
>    do not practice criminal law, with the
>    exception of handling one criminal case
>    in 1964.
>
> 2. I do not know Charles Edward Eubanks, Sr.
>
> 3. I have never heard of Charles Edward
>    Eubanks, Sr.
>
> 4. I never agreed to represent Charles
>    Edwards Eubanks, Sr.
>
> 5. I did not represent Charles Edward
>    Eubanks, Sr., from August 28, 2001, until
>    August 12, 2002.
>
> 6. I never told Mr. Eubanks' father, John
>    Eubanks, that I would represent Mr.
>    Eubanks.
>
> 7. I do not know John Eubanks.

Hansen Aff. at 1. In responding to the Affidavit, Petitioner did
not address Hansen's assertions that he did not represent
Petitioner and was not involved in any potential representation of
Petitioner. Instead, Petitioner merely supplemented his actual

---

[9] <u>See</u> 2nd Supp. Response (Doc. #31), attached exhibit.

innocence claim in an attempt to overcome the untimeliness of the Petition. <u>See</u> 2nd Supp. Reply. Thus, the record contains no evidence, other than Petitioner's conclusory Affidavit, which suggests that Daniel P. Hansen ever represented Petitioner or was in any way involved in any potential representation of Petitioner.

In his Affidavit, Mr. Hansen affirmatively states that he does not know Petitioner Eubanks or Petitioner's father. <u>See</u> Hansen Aff. Petitioner has not submitted any letters, contracts or other documents to show otherwise. Petitioner has simply provided no evidence of bad faith or dishonesty on the part of Hansen with respect to him. <u>See</u> <u>Tejada</u>, 941 F.2d at 1559. Moreover, while Petitioner refers to Hansen as his appellate counsel, <u>see</u> Reply at 4, a review of the appellate court docket sheet indicates that Hansen never filed a notice of appearance in Petitioner's case. 1st Supp. Resp. Ex., Appellate Court Docket Sheet, Case No. 5D00-2867, <u>Charles E. Eubanks v. State of Florida</u>. More importantly, the Court notes that, on August 27, 2002, Petitioner filed a petition for writ of habeas corpus in state court, in which he complained of ineffective assistance of appellate counsel (Leonard R. Ross) without any mention of Daniel P. Hansen's involvement or representation. Resp. Ex. B.

Finally, although Petitioner asserts that Hansen "affirmatively misadvised [him] that his direct appeal was still pending long after it had been decided by the Fifth District Court of Appeal of Florida," Reply at 4 (citation omitted), the record

reflects otherwise.  By letter dated August 29, 2001, Petitioner's

appellate counsel (Leonard R. Ross) notified Petitioner that the

appellate court had affirmed his conviction and sentence; counsel

also enclosed a copy of the appellate decision for Petitioner.  The

letter reads:

> Enclosed please find a copy of the decision of the District Court of Appeal, Fifth District, in your case.  As you can see, the Court has affirmed your conviction and sentence.  Regrettably, the Court did not agree with the arguments that we made in your brief.  The Court has found that no reversible error was committed and therefore affirmed your case without comment.

> I do not believe that there are any grounds for further proceedings as far as appeal is concerned.  There is no basis to seek review of the District Court's decision by the Florida Supreme Court.  This is especially true since the District Court did not write an opinion and therefore there are no facts stated in the Court's order of affirmance.  In order to have the Florida Supreme Court review your case you must show that the decision in your case is in express or direct conflict with another decision of another appellate court of this state on the same set of facts.  <u>See</u> Rules 9.030(2)(a) and 9.120, Florida Rules of Appellate Procedure.  Without any facts in the decision of the district court, it is impossible to do this.  <u>See</u> <u>Jenkins v. State</u>, 385 So.2d 1356 (Fla. 1980).

> You might wish to consult the Florida Rules of Criminal Procedure concerning a motion for mitigation or reduction of sentence under Rule 3.800.  Such a motion must be presented to the circuit court <u>and</u> must be ruled upon by the circuit judge within 60 days of the appellate court's affirmance of your conviction and sentence.  A motion for mitigation of sentence under Rule 3.800 gives

18

the trial judge a chance to reduce the sentence he previously imposed upon you. In your motion, you should inform the court of any and all circumstances of your family, past record, background, potential employment if released, etc., which might tend to invoke the court's sympathy and result in the judge's reducing your sentence. A motion for reduction of sentence is totally discretionary with the trial judge. That is, a denial of a motion to mitigate a sentence is not appealable.

Additionally, I call your attention to Rule 3.850, Florida Rules of Criminal Procedure, which governs motions for post-conviction relief. This motion can be used to present matters which were not apparent from the record and thus could not be raised on direct appeal. The deadline for filing a Rule 3.850 motion is two years after the issuance of the appellate court's mandate. You should consult the rule itself for further directions.

Write me immediately for your transcripts if you intend to pursue any further action. I know that this is a disappointment to you; I am sorry to inform you that there is no further action that our office can take [o]n your behalf.

3rd Supp. Resp. Ex., Letter.

On September 18, 2001, appellate counsel Ross provided the direct appeal record to Petitioner and again advised Petitioner that the decision on direct appeal had issued on August 28, 2001. The letter, in pertinent part, states:

**As you requested in your letter dated September 5, 2001, I am enclosing the complete record on appeal consisting of one volume.**

Please note that the decision in your case was filed on August 28, 2001, and the

> mandate should issue on approximately
> September 18, 2001, closing this appeal case.
> You will need these dates if you intend to
> file a 3.800 or 3.850 motion with the circuit
> court. Each motion has time limitations. See
> the enclosed copies of the rules governing
> these motions.
>
> I am enclosing copies of 3.800 and 3.850
> rules and motions to help you in preparing
> your own 3.800 or 3.850 motion for filing with
> the circuit court.

2nd Supp. Resp. Ex., Letter (emphasis added). The letter, which was addressed to Petitioner at Holmes Correctional Institution and sent by certified mail with return receipt requested, was received at the prison. _See_ 2nd Supp. Resp. Ex., return receipt. A review of Ross's September 18, 2001, letter reflects that it was written in response to an inquiry from Petitioner on September 5, 2001; the inquiry having been prompted by Petitioner's learning that the appellate court had affirmed his conviction and sentence. Thus, it is evident that, on or before September 5, 2001, Petitioner knew that the appellate court had affirmed his conviction and sentence, and his contention that he did not learn this fact until August 12, 2002, finds no support in the record.

Based upon the record before this Court, Petitioner is not entitled to equitable tolling with respect to the delay he attributes to attorney Hansen. The burden is on Petitioner to establish that he is entitled to equitable tolling, and he has not met the stringent burden. Respondents have submitted Hansen's Affidavit as well as letters that refute Petitioner's claims.

20

Additionally, Petitioners' current contention is inconsistent with the record as reflected in his state court petition for writ of habeas corpus. Therefore, Petitioner is not entitled to an evidentiary hearing or to the benefit of equitable tolling for any portion of the time he claims Daniel P. Hansen represented him and failed to act on his behalf (from August 28, 2001, through August 12, 2002). With respect to this time period, Petitioner has not established extraordinary circumstances to justify equitable tolling and has failed to show his diligence in ascertaining the limitations period. Thus, he has not shown extraordinary circumstances that were both beyond his control and unavoidable even with diligence.

Second, Petitioner Eubanks contends that he is entitled to the benefit of equitable tolling for the period from October 2, 2002 (when Malcolm L. Stephens, Jr., affirmatively misrepresented to Petitioner that he had prepared and filed a Rule 3.850 motion, but failed to do so) to January 31, 2003 (when Petitioner discovered that Stephens had not prepared and filed the Rule 3.850 motion). Reply at 5. As previously noted, Petitioner was given the opportunity to supplement the record to explain the circumstances surrounding this representation and to provide any correspondence and/or contracts resulting from such representation. Although Petitioner asserts that "Malcolm Stephens was contacted and tenatively [sic] retained to file a [Rule] 3.850 motion between October 2[,] 2002[,] and January 31[,] 2003[,] and failed to do

so," Pet. Aff. at 1, Petitioner has not provided any documentation reflecting that Malcolm Stephens represented Petitioner during this time frame or at any other time. Petitioner has not carried his heavy burden of showing that he is entitled to equitable tolling. Indeed, with respect to this time period, Petitioner has not established extraordinary circumstances to justify equitable tolling and has failed to show his own due diligence in ascertaining the limitations period. Thus, he has not shown extraordinary circumstances that were both beyond his control and unavoidable even with diligence.

Third, Petitioner Eubanks contends that he is entitled to equitable tolling for the period beginning January 31, 2003, and ending February 24, 2003 (when Petitioner was finally able to secure all of his trial transcripts, files and records in order to prepare his own Rule 3.850 motion after Stephens' abandonment, failure to communicate and withholding of trial transcripts).[10] Petitioner is not entitled to equitable tolling for this period of twenty-five (25) days. Petitioner was aware of the State's two-year time limitation to file a Rule 3.850 motion since his appellate counsel had informed him of the rule and provided him with a copy of Rule 3.850. 2nd Supp. Resp. Ex.; 3rd Supp. Resp. Ex. Assuming _arguendo_ that Petitioner did not possess his trial

---

[10] The Court notes that attorney Ross's September 18, 2001, letter stated that he is providing Petitioner with the complete record on appeal.

transcripts, files and records, he could have filed his own Rule 3.850 motion prior to receiving his trial transcripts, files and records.

Thus, as Petitioner was provided with a copy of Rule 3.850, he was aware that he did not need to perform extensive research in order to file the Rule 3.850 motion. Rule 3.850 does not require that the motion be supported by a legal memorandum. Rule 3.850 and the motion for post conviction relief form provided in Rule 3.987 are designed to assist <u>pro</u> <u>se</u> filers without the requirement of legally precise pleadings or a detailed memorandum. Here, after receiving his trial transcripts, files and records, Petitioner could have sought leave to supplement or amend his motion with any additional arguments, facts or claims as long as the supplement was timely filed and the motion had not been ruled upon by the trial court. <u>See</u> <u>Hyacinthe v. State</u>, 940 So.2d 1280, 1281 (Fla. 4th DCA 2006) (stating "a 3.850 movant has the right to amend or supplement a motion at any time within the two-year time limit as long as the trial court has not yet ruled on the merits of the motion") (citations omitted). "Transcripts are not necessary for the preparation of a legally sufficient [Rule] 3.850 motion[,]" and in preparing such a motion, a defendant "must rely on his best recollection of the court proceedings." <u>McFadden v. State</u>, 711 So.2d 1350 (Fla. 1st DCA 1998) (citations omitted).

The absence of records, as an equitable tolling claim, was addressed and rejected in <u>Smith v. Deloach</u>, No. 2:05-CV-935-MHT, 2007 WL 4219152, at *3 (M.D. Ala. Nov. 28, 2007).

> Even though Smith was not in possession of his trial transcript for the period of time he alleges, he has failed to set forth any "extraordinary circumstances" which prevented the filing of a timely habeas petition. <u>See</u> <u>Donovan v. Maine</u>, 276 F.3d 87, 93 (1st Cir. 2002) (delay in obtaining transcript no basis for equitable tolling of one-year limitation period); <u>Lloyd v. Van Natta</u>, 296 F.3d 630, 634 (7th Cir. 2002) (same); <u>Gassler v. Bruton</u>, 255 F.3d 492, 495 (8th Cir. 2001) ("Possession of a transcript, however, is not a condition precedent to the filing of [a petition for post-conviction relief]"; <u>see also</u> <u>Pacheco v. Artuz</u>, 193 F.Supp.2d 756, 760 (S.D.N.Y. 2002) (the § 2244(d)(1)(D) time bar runs "'from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'"); <u>Jihad v. Hvass</u>, 267 F.3d 803, 806 (8th Cir. 2001) ("[L]ack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling"); <u>Brown v. Cain</u>, 112 F.Supp.2d 585, 587 (E.D. La. 2000) (transcript unnecessary to prepare habeas petition); <u>Fadayiro v. United States</u>, 30 F.Supp.2d 772, 779-780 (D.N.J. 1998) (delay in receiving transcripts not sufficiently extraordinary to justify application of equitable tolling); <u>United States v. Van Poyck</u>, 980 F.Supp. 1108, 1110-1111 (C.D. Cal. 1997) (delay in receipt of transcript not an "extraordinary circumstance[ ]" sufficient to justify equitable tolling). In light of the foregoing, the court concludes that Smith's lack of access to his trial transcript does not establish an extraordinary circumstance sufficient to justify equitable tolling.

Thus, Petitioner is not entitled to the benefit of equitable tolling for this period. He could have filed his Rule 3.850 motion without the records and thereafter amended or supplemented, if necessary. <u>See</u> 2nd Supp. Response at 5 n.2; 1st Supp. Response at 4-5 n.2. His lack of access to the trial transcripts does not excuse his failure to file the motion nor constitute an extraordinary circumstance warranting equitable tolling.

Fourth, Petitioner Eubanks contends that he is entitled to the benefit of equitable tolling for the period from February 28, 2005 (when Ellis S. Rubin affirmatively misstated to Petitioner that he had prepared and filed a Rule 3.800 motion, but failed to do so) through May 17, 2005 (when Petitioner discovered that Rubin had not prepared and filed the Rule 3.800 motion). Again, Petitioner was given the opportunity to supplement the record to explain the circumstances surrounding the representation and to provide any correspondence and/or contracts resulting from such representation. Petitioner responded with the following: "Ellis Rubin was retained to file a [Rule] 3.800(a) motion between February 28[,] 2005[,] and May 17[,] 2005[,] but failed to do so." Pet. Aff. at 1. Petitioner has not provided any factual support for his conclusory statement nor has he presented any documentation whatsoever that reflects that Ellis Rubin represented Petitioner during this or any time frame. Petitioner has failed to carry his burden of showing that he is entitled an evidentiary hearing on the question of equitable tolling. With respect to this time period, Petitioner

25

has not presented evidence of extraordinary circumstances to justify equitable tolling <u>and</u> further has failed to show his due diligence in ascertaining the limitations period. In sum, Petitioner has not shown extraordinary circumstances that were both beyond his control and unavoidable even with diligence.

Finally, Petitioner Eubanks contends that he is entitled to equitable tolling for the period running from May 17, 2005, through June 1, 2005 (when Petitioner was finally able to secure all of his trial transcripts, files and records in order to prepare his own Rule 3.800 motion after Rubin's abandonment, failure to communicate and withholding of trial transcripts). For the reasons stated with respect to the third period of time (from January 31, 2003, to February 24, 2003), Petitioner is not entitled to equitable tolling for this period of sixteen (16) days. Again, Petitioner, through diligence, could have filed his own Rule 3.800 motion without the trial transcripts, files and records. <u>See</u> 1st Supp. Response at 5 n. 3.

Giving Petitioner the benefit of all periods of equitable tolling he contends are warranted, Petitioner's calculation of the one-year limitations period proceeds as follows: the one-year limitations period was equitably tolled for two hundred and fifty-nine (259) days from November 27, 2001,[11] through August 12, 2002,

---

[11] Petitioner's conviction became final on November 26, 2001, and the one-year period of limitations began to run on November 27, 2001.

and then ran for fourteen (14) days from August 13, 2002, through August 26, 2002; the limitations period was tolled during the pendency of the petition for writ of habeas corpus from August 27, 2002, through September 27, 2002, and then ran again for four (4) days from September 28, 2002, through October 1, 2002; the limitations period was equitably tolled from October 2, 2002, through February 24, 2003, and then ran for nine (9) days from February 25, 2003, through March 5, 2003; the limitations period was tolled during the pendency of Petitioner's Rule 3.850 motion from March 6, 2003, through June 30, 2004, and then ran for two hundred and forty-two (242) days from July 1, 2004, through February 27, 2005; the limitations period was equitably tolled from February 28, 2005, through June 1, 2005, and then ran for twelve (12) days from June 2, 2005, through June 13, 2005; and lastly, the one-year limitations period was tolled during the pendency of the Rule 3.800 motion from June 14, 2005, through August 8, 2006, before running for thirty-six (36) days from August 9, 2006, until September 14, 2006, when Petitioner filed the federal Petition pursuant to the mailbox rule. Based upon Petitioner's calculation, and giving him the benefit of all time tolled by the pendency of motions or which Petitioner asserts should be equitably tolled, three hundred and seventeen (317) days of the one-year limitations period ran before Petitioner filed the instant action.

By Petitioner's calculation, with the benefit of all claimed periods of equitable tolling, this Petition is timely. However,

the Court has determined that Petitioner is not entitled to the
benefit of equitable tolling for the period of delay that he
ascribes to attorney Hansen's failure to act on Petitioner's behalf
(August 28, 2001, through August 12, 2002). While the one-year
limitations period did not begin to run until November 27, 2001
(the day after Petitioner's conviction became final), it continued
to run for a period of two hundred and seventy-three (273) days
until August 27, 2002, when he filed his pro se Petition for Writ
of Habeas Corpus Seeking Belated Appeal Because of Ineffective
Assistance of Appellate Counsel. Even giving Petitioner the
benefit of all other periods of equitable tolling he contends are
warranted, his Petition is untimely. Therefore, merely excluding
the first equitable tolling period with respect to Daniel P. Hansen
results in a finding that the instant Petition is untimely.[12]

Petitioner has also submitted a letter, dated August 30, 2006,
which he received on or about September 4, 2006. See Supp. Reply
Ex. A. In the letter, Mary E. Adkins (his attorney) notified him
that the Supreme Court of Florida had declined to exercise its
jurisdiction, see Eubanks v. State, 937 So.2d 665 (Fla. 2006);
Resp. Ex. E at 63, and further instructed him on the one-year
limitations period. See Supp. Reply Ex. A. Adkins did not

---

[12] Giving Petitioner the benefit of the periods of equitable
tolling for attorneys Stephens and Rubin, but excluding the
equitable tolling period with respect to Hansen, results in the
running of five hundred and seventy-six (576) days before
Petitioner filed his Petition in this Court.

calculate the running of the one-year limitations period, but merely warned Petitioner that "[t]he government will certainly claim your one-year limit has already expired." Id. Based upon this correspondence, Petitioner asserts that his September 4, 2006, receipt of the letter, and the resulting filing of the instant Petition on September 14, 2006, pursuant to the mailbox rule, reflect his diligence in pursuing habeas corpus relief. This Court disagrees. Petitioner has not shown the required diligence. Merely showing diligence ten days before the filing of the federal Petition, and well after the one-year limitations has expired, is not sufficient.

Nevertheless, Petitioner Eubanks argues that the Court should reach the merits of his claims despite any untimeliness because he is actually innocent of entering the victims' residence and arming himself within the residence. Specifically, he asserts that he could have "produced credible testimony from Monty Moore, Jimmy Epps and James Stanford to completely destroy the State's case by proving . . . that the jailhouse snitch, Michael Davenport, falsely testified at trial that Eubanks had confessed to him that he broke into the . . . residence and stole the gun in question." Reply at 13 (citations omitted); see Supp. Reply at 5-6. Further, Petitioner states that he could have testified on his own "about how he gained possession of the gun without stealing it." Reply at 13 (citation omitted). Lastly, he contends that his defense

counsel should have investigated Ronald McCloud.[13]  Supp. Reply at 4; 2nd Supp. Reply at 2-3.

Petitioner correctly points out that, in the Rule 3.850 proceedings, he raised a claim of ineffectiveness for defense counsel's failure to call witnesses Monty Moore, Jimmy Epps and James Stanford.  At the evidentiary hearing, counsel testified that, prior to the trial, Petitioner had informed him that he bought the gun from Ronald McCloud; however, the defense was unable to locate McCloud, and Petitioner later told the defense team that McCloud had left the State.  EH Tr. at 161-62.  Further, counsel testified that, prior to the trial, Petitioner also told him about James Stanford, that the defense investigator interviewed Stanford, and thereafter, counsel strategically decided not to call Stanford. Id. at 165-67, 170-72, 179.  Petitioner testified that, prior to the trial, he disclosed the names of Jimmy Epps, James Stanford and Monty Moore to counsel.  Id. at 183, 187-89.

To make a showing of actual innocence, Petitioner must show "that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995).  In assessing the adequacy of a petitioner's showing, the Court stated:

> The meaning of actual innocence . . . does not merely require a showing that a

---

[13] Petitioner believes that McCloud is the person who entered the victims' house, stole the gun, and thereafter, sold the gun to Petitioner.  Supp. Reply at 4; 2nd Supp. Reply at 3.

> reasonable doubt exists in the light of the
> new evidence, but rather that no reasonable
> juror would have found the defendant guilty.
> It is not the district court's independent
> judgment as to whether reasonable doubt exists
> that the standard addresses; rather the
> standard requires the district court to make a
> probabilistic determination about what
> reasonable, properly instructed jurors would
> do. Thus, a petitioner does not meet the
> threshold requirement unless he persuades the
> district court that, in light of the new
> evidence, no juror, acting reasonably, would
> have voted to find him guilty beyond a
> reasonable doubt.

Id. at 329; see also Sibley v. Culliver, 377 F.3d 1196, 1205 (11th

Cir. 2004) (stating that "[t]o establish the requisite probability,

the petitioner must show that it is more likely than not that no

reasonable juror would have convicted him in the light of the new

evidence") (citations omitted).

This Court finds that Petitioner has not made a showing of

actual innocence. He has not offered any reliable evidence that

was not available at the time of trial. See Melson v. Allen, 548

F.3d at 1002 (stating that petitioner, to make a sufficient showing

of actual innocence, is required to produce new reliable evidence

that was not presented at trial) (citations and quotations

omitted). Moreover, he has failed to produce any new reliable

evidence, such as exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence that was not

presented at trial. Petitioner offers only his own unsubstantiated

and self-serving statements that he is actually innocent. Even

assuming such evidence was new, Petitioner has failed to

demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of the new evidence. The Court finds Petitioner's allegations of actual innocence to be insufficient. <u>See</u> 2nd Supp. Response at 6-9.

In sum, Petitioner has failed to present a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him. Accordingly, the Petition is due to be dismissed as untimely filed pursuant to 28 U.S.C. § 2244(d).

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Petitioner's request that this Court subpoena his sister (Deborah Eubanks), contained in his Affidavit (Doc. #30), is **DENIED.**

2. Respondents' request to dismiss the Petition as untimely is **GRANTED.**

3. This case is **DISMISSED** with prejudice.

4.    The Clerk of the Court shall enter judgment dismissing this case with prejudice.

5.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of September, 2009.


MARCIA MORALES HOWARD
United States District Judge


sc 9/30
c:
Charles Edward Eubanks, Sr.
Assistant Attorney General (Parrish)